IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES MOWRY,<br><br>           Plaintiff,<br><br>   v.<br><br>THE MEET GROUP, INC., JEAN CLIFTON, GEOFFREY COOK, CHRISTOPHER FRALIC, SPENCER RHODES, KEITH RICHMAN, BEDI SINGH, and JASON WHITT,<br><br>           Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Charles Mowry ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by The Meet Group, Inc. ("Meet Group" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Meet Group and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Meet Group and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to affiliates of NCG NuCom Group SE ("NuCom") (the "Proposed Transaction").

2. On March 5, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with NuCom, eHarmony Holding, Inc. ("Parent"), and Holly Merger Sub, Inc. ("Merger Sub" and collectively with Parent, "eHarmony"). Pursuant to the Merger Agreement, the Company's shareholders will receive $6.30 for each share of the Company's common stock owned (the "Merger Consideration").

3. On April 2, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Meet Group and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Meet Group shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  In addition, the Company's stock trades on the NASDAQ Capital Market ("NASDAQ"), which is headquartered in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a common shareholder of Meet Group.

9. Defendant Meet Group is incorporated under the laws of the Delaware, with its principle executive offices located at 100 Union Square Drive, New Hope, Pennsylvania 18938. The Company's common stock trades on the NASDAQ under the symbol "MEET."

10. Defendant Jean Clifton ("Clifton") is and has been a director of Meet Group at all times during the relevant time period.

11. Defendant Geoffrey Cook ("Cook") is and has been the Company's Chief Executive Officer and a director at all times during the relevant time period.

12. Defendant Christopher Fralic ("Fralic") is and has been a director of Meet Group at all times during the relevant time period.

13. Defendant Spencer Rhodes ("Rhodes") is and has been the Company's Chairman of the Board at all times during the relevant time period.

14. Defendant Keith Richman ("Richman") is and has been a director of Meet Group at all times during the relevant time period.

15. Defendant Bedi Singh ("Singh") is and has been a director of Meet Group at all times during the relevant time period.

16. Defendant Jason Whitt ("Whitt") is and has been a director of Meet Group at all times during the relevant time period.

17. Defendants Clifton, Cook, Fralic, Rhodes, Richman, Singh, and Whitt are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants, along with Defendant Meet Group, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. Meet Group is a Delaware corporation and is a leading provider of interactive livestreaming solutions. The Meet Group's ecosystem of livestreaming apps enables users around the world to interact through one-to-many livestreaming broadcasts and text-based conversations.

**The Company Announces the Proposed Transaction**

20. On March 5, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> The Meet Group, Inc. (NASDAQ: MEET), a leading portfolio of mobile dating apps, today announced that it has entered into a definitive agreement to be acquired by ProSiebenSat.1`s and General Atlantic's joint company NuCom Groupin an all cash transaction for $6.30 per fully diluted share representing an enterprise value of approximately $500 million. Together with NuCom Group's portfolio company Parship Group, a matchmaking platform with its brands Parship, Elite Partner and eharmony, The Meet Group will become an integral part of a global leader in the online dating and social entertainment sector.
>
> After careful and thorough review, and following consultation with The Meet Group's financial and legal advisors, the transaction was unanimously approved by The Meet Group's board of directors. The purchase price represents a 30% and 43% premium to the unaffected 30 and 60 trading day volume weighted average price, respectively, to The Meet Group's common stock through December 13, 2019, the last trading day prior to published market speculation regarding a potential transaction involving the company.
>
> "The Meet Group Board of Directors undertook a robust process, which culminated in a transaction that we believe will deliver certain and immediate value to our shareholders," said Spencer Rhodes, Chairman of The Meet Group Board of Directors. "We are excited about this transaction and the significant benefits resulting from a combination with Parship Group," said Geoff Cook, Chief Executive Officer of The Meet Group. "This transaction will allow us to tap new strategic growth opportunities by leveraging our video platform and ProSiebenSat.1's experience with content and entertainment. What's more, with this transaction and the participation of both General Atlantic and ProSiebenSat.1, we will achieve a new level of financial scale and backing, which has the potential to further accelerate our growth."
>
> The Meet Group's freemium dating brands, featuring its industry-leading video platform technology, will be combined with NuCom's portfolio company Parship Group, which operates premium subscription dating brands including eharmony, Parship and Elite Partner. The transaction will diversify the revenue streams of both companies and increase their combined international footprint by broadening the companies' user base.
>
> Max Conze, CEO, ProSiebenSat.1 Media SE: "The acquisition of The Meet Group is one of ProSiebenSat.1's largest transactions. It will significantly advance our ambition to create one of the leading global players in online dating and interactive live video. We believe the combination of these two successful and

complementary businesses will also create synergies within the ProSiebenSat.1 universe and accelerate the growth of our market share in the German live video apps sector."

\*     \*     \*

The transaction, which is expected to close in the 2nd half of 2020, is subject to approval by The Meet Group's stockholders, along with the satisfaction of customary closing conditions and regulatory approvals, including the expiration or early termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, antitrust approvals in Germany and Austria as well as approval from the Committee on Foreign Investment in the United States. The Meet Group expects to hold a special meeting of its stockholders to consider and vote on the transaction as soon as feasible after the mailing of the proxy statement to shareholders.

The Meet Group plans to release its fourth quarter fiscal year 2019 results before market open on March 11, 2020. In light of the pending transaction announced today, the company will not hold a corresponding conference call.

**Representation**

BofA Securities is acting as financial advisor to The Meet Group, and Morgan, Lewis & Bockius LLP is acting as legal counsel.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

21.   On April 2, 2020, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22.   Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

6

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding Management's Financial Projections

23.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections. Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

25.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26.     Specifically, with respect to each set of financial projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Adjusted EBIT.

27.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding BofA's Financial Opinion**

28. The Proxy Statement contains the financial analyses and opinion of BofA Securities, Inc. ("BofA") concerning the Proposed Transaction, but fails to provide material information concerning such.

29. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's terminal values; (ii) the basis for BofA's application of terminal multiples of 8.0x to 10.0x; (iii) the inputs and assumptions underlying BofA's selection of discount rates ranging from 7.50% to 10.00%; (iv) the inputs and assumptions underlying BofA's selection of discount rates ranging from 7.00% to 9.00%; and (v) the inputs and assumptions underlying BofA's selection of perpetuity growth rates of 1.9% to 5.3%.

30. With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by BofA in its analysis.

31. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by BofA in its analysis.

32. With respect to BofA's analysis of price targets, the Proxy Statement fails to disclose which price targets were observed by BofA in its analysis, as well as the sources of such.

33. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to

better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

34. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

40. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

41. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

44. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Meet Group within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Meet Group, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

47. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

49. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 21, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*